**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| **Ari Berman,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**The BioTeam, LLC,**<br><br>**Defendant.** | **Civil Action No. 26-11198-NMG** |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from allegations of breach of an employment contract under Massachusetts law by Ari Berman ("Berman" or "plaintiff"). Pending before the Court is a motion to dismiss by BioTeam, LLC ("BioTeam" or "defendant") under Fed. R. Civ. P. 12(b)(6). For the reasons below, defendant's motion to dismiss will be denied.

## I. Background & Facts

BioTeam has filed a motion to dismiss for failure to state a claim upon which relief can be granted. Defendant asserts that 1) Berman, the former Chief Executive Officer ("CEO") of BioTeam, has failed to allege his own performance pursuant to the Employee Agreement, 2) "Good Reason" for his resignation, as

defined in the Employee Agreement, does not exist, and 3) his request for severance pay is therefore unavailing.

Berman was CEO of BioTeam for approximately six years and resigned via email on September 17, 2025, following what he alleges was his demotion from CEO to Chief Revenue Officer ("CRO") on September 15, 2025. Berman emailed his resignation to Adrian Tate ("Tate"), an executive of the N2 Group which acquired BioTeam in 2024. In his email resignation, Berman stated that he was resigning for "Good Reason" under section 5(b)(i) of the Employee Agreement. Good Reason is defined in the Agreement as (among other things)

> the occurrence of ... the following without the Employee's consent:
>
> a material diminution in the Employee's authority, duties and/or responsibilities (provided, however, that no such diminution shall be deemed to have occurred if, (A) Employee is assigned to another position in the Company having an executive-level title and associated executive-level duties and responsibilities, as agreed upon by the parties.

In response to Berman's email resignation, Tate stated that Good Reason did not exist for his resignation, given the exception for executive reassignment which he indicated was already in effect.

Defendant contends that, because Berman has not shown that he performed his duties sufficiently as CEO under the Employment Agreement, he cannot establish the elements necessary for a

breach of contract claim. Berman responds that, at the pleadings stage, he need only allege that he was acting as CEO at the time of his resignation and defendant's breach and is under no obligation to allege additional facts.

Berman and BioTeam disagree primarily as to whether Berman's resignation was voluntary and whether his reassignment to CRO from CEO was a material diminution in his authority and responsibilities. Defendant contends that Berman voluntarily resigned following his conversation with Tate on September 15, 2025, but, more importantly, even if Berman's reassignment from CEO to CRO was involuntary, because he was assigned to another executive position at the Company, there was no material diminution in his role under Section 5(b)(i) of the Employee Agreement.

Berman rejoins that the exception does not apply to him because he did not agree or consent to assume the role of CRO. He argues that because he resigned with Good Reason, he is entitled to severance pay pursuant to the applicable section of the Employee Agreement which states:

> Certain Termination Payments. In the event that (A) the Company terminates the Employee's employment without Cause (as defined above), or (B) **the Employee terminates Employee's employment for Good Reason (as defined above)**, then the Company will, for twelve (12) months following the effective date of termination: (i) continue to pay the Employee's Base Salary, at the rate in effect on the date of termination; and (ii) continue to pay its share of the Employee's group medical insurance premiums, provided the

> Employee timely and properly elects COBRA coverage in accordance with the Company's COBRA election procedures, and provided further that the Employee continues to provide timely payment of the Employee's share of such premiums (emphasis supplied).

Defendant responds that Berman need not assent to the reassignment to CRO for the exception to apply and that Berman mischaracterizes the clause "as agreed upon by the parties" in section 5(b)(i). Moreover, requiring executives to agree or consent to another executive role would enable any executive to refuse reassignment and resign for Good Reason, rendering the exception meaningless.

## II. Procedural History

Defendant filed the pending Motion to Dismiss in March, 2026, and plaintiff timely filed an opposition to which defendant filed a reply. Thereafter, plaintiff moved to strike defendant's supplemental declaration to its reply, which defendant opposed.

## III. Motion to Dismiss

### A. Legal Standard

To survive a 12(b)(6) motion to dismiss, plaintiff must state a claim that, accepting all allegations as true, is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausible means showing that it is more than merely possible that defendant is liable. Schatz v. Republican State

Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). The court will draw all reasonable inferences in plaintiff's favor, but the allegations cannot be conclusory. Iqbal, 556 U.S. at 678.

It is undisputed that Massachusetts law governs the Employee Agreement between BioTeam and Berman. To state a claim for breach of contract under Massachusetts law, plaintiff must establish:

> (1) the existence of the contract, (2) the plaintiff's willingness to perform or performance, and (3) breach by the defendant; if damages are sought causation and the amount of damages must also be proved.

Amicas, Inc. v. GMG Health Sys., Ltd., 676 F.3d 227, 231 (1st Cir. 2012); See 5 Charles Alan Wright & Arthur R. Miller, Fed. Practice And Procedure (hereinafter Wright & Miller) § 1235. The complaint must allege facts with enough specificity to notify defendant of the nature of the claim. Dodge v. Signature Flight Support Corp., 437 F. Supp. 3d 109, 111 (D. Mass. 2020); Foss v. Marvic, 365 F. Supp. 3d 164, 167 (D. Mass. 2019), aff'd sub nom. Foss v. Marvic Inc., 994 F.3d 57 (1st Cir. 2021) (finding that plaintiff's allegations that the parties entered into a contract, she performed her duties, and defendant breached was sufficient to state a claim). To sufficiently plead a breach of contract claim, plaintiff can either

> (1) quote pertinent contractual language; (2) contain a copy of the contract as an attachment; or (3) summarize the contract's purported legal effect,

but plaintiff need not plead the elements in detail. Id.

The interpretation of a contract and whether it is ambiguous is a question of law for the Court. Perras v. Trane U.S., Inc., 578 F. Supp. 3d 193, 199 (D. Mass. 2022). Where the language in a contract is clear, however, "it must be construed according to its plain meaning." Balles v. Babcock Power Inc., 476 Mass. 565, 571 (2017).

**B. Application**

Berman has pled facts sufficient to establish a breach of contract claim. Despite defendant's contentions to the contrary, Berman does not need to allege specific facts relating to his performance as CEO in his pleadings. See Dodge v. Signature Flight Support Corp., 437 F. Supp. 3d 109, 111 (D. Mass. 2020) (finding that bare factual allegations are sufficient at the pleadings stage). In his complaint, Berman 1) establishes that he was appointed to CEO in 2019 and acted as CEO until his resignation, 2) provides the Employee Agreement signed by Berman and cites the relevant language at issue and 3) alleges defendant breached the contract by failing to provide him with severance following his resignation with Good Reason. Employee Agreement Section 2(a), Section 5(b)(1), Section 5(g). At the motion to dismiss stage, Berman is not required to allege additional facts in order to state a breach of contract claim.

Turning to the voluntariness of Berman's resignation, BioTeam submitted a non-verifiable transcript of the conversation between Berman and Tate to support its contention that Berman failed to perform his duties as CEO and voluntarily resigned following the subject conversation. While district courts can consider documents attached to the complaint or expressly incorporated therein, only under limited circumstances can extrinsic evidence be considered when deciding a motion to dismiss. Extrinsic evidence includes:

> documents the authenticity of which are not disputed by the parties; ... official public records; ... documents central to plaintiffs' claim; [and] ... documents sufficiently referred to in the complaint.

Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (quoting Watterson v. Page, 987 F.2d 1 (1st Cir. 1993)). Although Berman briefly refers to the conversation with Tate on September 15, 2025 in his complaint, the transcript and specific statements made during that conversation are not expressly incorporated therein. Furthermore, it is only in defendant's supplemental declaration that Berman declares that he first saw the transcript. The Court will not therefore consider the transcript at the motion to dismiss stage and will allow plaintiff's motion to strike. As discussed below, the Court also need not consider the transcript to determine whether leave

to amend would be futile and/or whether dismissal should be with prejudice.

The question remains whether "Good Reason" existed for Berman to resign under the Employment Agreement. Construing the facts alleged in the non-moving party's favor, the Court concludes that Berman's resignation was not voluntary nor unconditional because it was in response to his alleged demotion to CRO which he declined. BioTeam does not claim Berman agreed to become CRO and, if permitted by BioTeam, Berman would have remained acting as CEO.

The Court is also persuaded that the phrase "as agreed upon by the parties" in section 5(b)(i), requires that Berman and BioTeam agree to Berman's reassignment to CRO in order for the exception for executives to apply. Defendant's suggested reading, that no such agreement or consent between the parties is required, would render the phrase a nullity. Providence J. Co. v. Providence Newspaper Guild, 271 F.3d 16, 21 (1st Cir. 2001)(emphasizing that it is a basic principle of contract law that "constructions which render contract terms meaningless should be avoided"). Because there is no evidence of an agreement pertaining to Berman's reassignment to CRO, the Court reasonably infers that his alleged demotion was a material diminution in his authority and responsibilities.

The threshold at the motion to dismiss stage is low and the Court concludes that it is plausible that 1) Berman's resignation was involuntary, 2) there was no agreement between the parties that he would assume the position of CRO and 3) BioTeam failed to pay severance in breach of the Employment Agreement. Berman has therefore pled a breach of contract claim against BioTeam sufficient to survive a 12(b)(6) motion to dismiss.

## Order

For the foregoing reasons, defendant BioTeam's Motion to Dismiss [Docket No. 4] is **DENIED** and plaintiff's Motion to Strike [Docket No. 13] is **ALLOWED**.

**So ordered.**

Nathaniel M. Gorton
Nathaniel M. Gorton
Senior United States District Judge

Dated: November 4 , 2026